**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL DOUMA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KENVUE BRANDS LLC, d/b/a JOHNSON & JOHNSON<br><br>Defendant. | Civil Action No. 25-18129 (SDW) (JRA)<br><br>**OPINION**<br><br>November 23, 2026 |

**WIGENTON**, District Judge.

Before this Court is Defendant Kenvue Brands LLC's ("Defendant") Motion to Dismiss (D.E. 16 ("Motion")) Plaintiff Michael Douma's ("Plaintiff") First Amended Complaint (D.E. 11 ("FAC")) pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).[1] Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d). Venue is proper pursuant to 28 U.S.C. § 1391(b). This Opinion is issued without oral argument pursuant to Rule 78. For the reasons set forth herein, Defendant's Motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Defendant produces, advertises, and sells an oil product titled "shea & cocoa butter oil" (the "Oil Product"). (FAC ¶ 1.) Both shea butter and cocoa butter have moisturizing properties

[1] Citations to "D.E." refer to docket entries in the Court's Electronic Case Filing System for this matter and any internal citations contained therein, unless otherwise indicated.

that provide recognized skin care benefits. (*Id.* ¶¶ 10–12.) The Oil Product bears the "shea & cocoa butter oil" title prominently on its front label. (*Id.* ¶¶ 1, 14.) Its back label states that the Oil Product is "[e]nriched with shea & cocoa butter," and contains an ingredients list with four ingredients: (1) mineral oil; (2) fragrance; (3) shea butter, and (4) cocoa butter. (*Id.* ¶¶ 17–19.)

Plaintiff, a Maryland resident, reviewed the Oil Product's front label both in person and on the website Amazon.com ("Amazon").[2] (*Id.* ¶ 5.) On April 30, 2025, Plaintiff purchased the Oil Product from Amazon. (*Id.*) At the time of that purchase, Plaintiff believed the Oil Product was extracted from shea butter and cocoa butter based on its front label, and "sought to purchase a natural moisturizer comprised of cocoa butter and shea butter." (*Id.* ¶¶ 5, 23.) At some time after the purchase, however, Plaintiff realized that the Oil Product is predominantly mineral oil, and is comprised of less than 1% shea butter and less than 1% cocoa butter. (*Id.* ¶ 16–21.) Plaintiff asserts that if he and other similarly situated purchasers had known the true composition of the Oil Product, they would not have purchased it. (*Id.* ¶ 31.)

On September 9, 2025, Plaintiff's counsel sent a letter to Defendant, asserting that Defendant misrepresented the composition of the Oil Product, violated written and implied warranties to consumers, and injured Plaintiff and all similarly situated purchasers of the Oil Product. (*Id.* ¶ 32.)

[2] At the motion to dismiss stage, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, Defendant argues that this Court may properly consider the Amazon listing for the Oil Product, because Plaintiff alleges that he purchased the Oil Product from Amazon. (D.E. 16-2 at 21 n.4.) Defendant attaches a copy of the Amazon listing (D.E. 16-5, Def.'s Ex. C) and certifies that it was accessed on April 16, 2026 (D.E. 16-2 at 1–2). Plaintiff disputes the authenticity of the document and argues that the listing may have changed since Plaintiff made his purchase on March 30, 2025. (D.E. 24 at 26.) Accordingly, this Court will not consider Defendant's Exhibit C at the pleading stage.

### B. Procedural History

Plaintiff initiated this class action lawsuit on December 3, 2025.[3] (D.E. 1.) On March 13, 2026, Defendant moved to dismiss Plaintiff's original complaint. (D.E. 7.) Plaintiff subsequently filed the FAC on April 2, 2026. (D.E. 11.) The FAC asserts five claims against Defendant: (1) Fraudulent Concealment (FAC ¶¶ 41–54); (2) Unjust Enrichment (FAC ¶¶ 55–62); (3) Breach of Express Warranty under Md. Code Ann., Com. Law § 2-313 (FAC ¶¶ 63–68); (4) Violation of the Maryland Consumer Protection Act ("MCPA") under Md. Code Ann., Com. Law §§ 13-303 (FAC ¶¶ 69–84); and (5) Breach of the Implied Warranty of Merchantability under Md. Code Ann., Com. Law § 2-314 (FAC ¶¶ 85–91).[4]

On April 16, 2026, Defendant moved to dismiss the FAC. (D.E. 16.) The parties timely completed briefing. (D.E. 24, 25.)

## II. LEGAL STANDARD[5]

### A. Rule 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[3] Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), and Federal Rule of Civil Procedure 23, Plaintiffs define the class as "[a]ll persons who purchased Defendant's 'Johnson's shea & cocoa butter oil' product in Maryland during the four year period preceding the filing of the complaint." (FAC ¶ 33.)

[4] Plaintiff also vaguely alleges that Defendant violated federal and Maryland state laws with respect to the labeling of cosmetics, but Plaintiff does not assert claims for relief on that basis. (FAC ¶¶ 24–27.)

[5] This Court need not address Defendants' motion to dismiss Plaintiff's request for injunctive relief pursuant to Rule 12(b)(1) at this time. Paragraph (d) of the FAC's "Demand for Relief" requests "[a]n order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein," and Defendants argue that Plaintiff lacks Article III standing to pursue that relief. (D.E. 16-1 at 44–47.) In addition to the reasons explained in this Opinion, *see infra*, the FAC fails to state a claim upon which relief may be granted in the first place. Thus, Plaintiff's request for injunctive relief is moot at this time. *See Wiseberg v. Toyota Motor Corp.*, No. 11-3776, 2012 WL 1108542, at *12 (D.N.J. Mar. 30, 2012) (finding a request for an injunction is moot when the claims upon which it is premised are dismissed, because an injunction is a form of relief, not a cause of action); *Kaplan v. Miller*, No. 14-7307, 2016 WL 155038, at *5 (D.N.J. Jan. 12, 2016) (holding that the plaintiff's request for injunctive relief was moot when

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a plaintiff states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion to dismiss, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). Mere legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

**B. Rule 9(b)**

Claims sounding in fraud are additionally subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Put differently, a party asserting a claim sounding in fraud must plead the "who, what, when, where and how" of the events underlying the claim. *In re Rockefeller Ctr. Props., Inc. Sec.*

---

he failed to state a claim upon which relief may be granted). Accordingly, this Court does not reach the issue of whether Plaintiff has Article III standing to seek injunctive relief.

*Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

## III. DISCUSSION

### A. Fraud Claims

As a preliminary matter, this Court will apply Maryland law to Plaintiff's MCPA and fraudulent concealment claims. "It is well established that in a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007). However, when the parties agree upon which state's law applies, and that state has a clear interest in the litigation, no choice-of-law analysis is required. *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *8 (D.N.J. Jan. 24, 2014); *see also Butera v. Honeywell Int'l, Inc.*, No. 18-13417, 2020 WL 64568, at *2 (D.N.J. Jan. 6, 2020) (collecting cases).

Here, Plaintiff obviously relies on Maryland law for his MCPA claim, (FAC ¶¶ 69–94), and Defendant explicitly agrees that Maryland law governs Plaintiff's consumer fraud claim. (D.E. 16-1 at 25 n.5.) And in their briefs, both parties apply Maryland law to analyze Plaintiff's fraudulent concealment claim. (D.E. 16-1 at 38–40; D.E. 24 at 33-35; D.E. 25 at 15–16.) Moreover, Plaintiff is a Maryland resident who purchased the Oil Product in Maryland and brings the lawsuit on behalf of other similarly situated consumers who also purchased the Oil Product in Maryland. Accordingly, this Court will analyze the MCPA and fraudulent concealment claims under Maryland law.

#### i. MCPA

Plaintiff claims that Defendant engaged in unfair or deceptive trade practices in violation of § 13-303 of the MCPA. (FAC ¶¶ 69–84.) "To plead a standalone claim under the MCPA, a

consumer must allege '(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury.'" *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 380 (4th Cir. 2022) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)). "Further, because an MCPA claim sounds in fraud, it must meet the heightened pleading standard articulated in Rule 9(b)." *Innovations Surgery Ctr., P.C. v. United Healthcare Ins. Co.*, 722 F. Supp. 3d 582, 594 (D. Md. 2024).

As to the first element, the MCPA explicitly prohibits fourteen categories of unfair or deceptive trade practices. *See* Md. Code Ann., Com. Law § 13-301; *Wheeling v. Selene Fin. LP*, 250 A.3d 197, 216 (Md. App. Ct. 2021) ("Section 13-303 of the MCPA generally prohibits unfair, abusive, or deceptive trade practices, and § 13-301 of the Act contains a nonexclusive list of practices that are defined to be unfair, abusive, or deceptive."). Plaintiff argues that Defendant's conduct falls within the scope of three such categories (FAC ¶ 73): (i) § 13-301(1), which encompasses any "[f]alse . . . or misleading . . . representation of any kind which has the capacity, tendency, or effect of misleading consumers;" (ii) § 13-301(3), which includes any "[f]ailure to state a material fact if the failure deceives or tends to deceive;" and (iii) § 13-301(9), which covers "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods."

For a representation to fall within the scope of § 13-301(1) of the MCPA, Plaintiff must demonstrate that the representation "is 'false' or 'misleading' *and* . . . has 'the capacity, tendency, or effect of deceiving or misleading' consumers." *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 510 (Md. Ct. Spec. App. 1999) (quoting Md. Code Ann., Com. Law § 13-301). "[W]hether a statement is 'misleading' is judged from the point of view of a reasonable, but unsophisticated

consumer." *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 558 (D. Md. 2012). And a representation has the "capacity, tendency, or effect" of misleading consumers when "a significant number of unsophisticated consumers would find [the] information [at issue] important in determining a course of action." *Id.* (alteration in original) (quoting *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1059 (Md. App. Ct. 1999)). Importantly, "a statement 'cannot be viewed in a vacuum'; rather, it must be viewed in the context in which it was made, along with other representations to the consumer." *Id.* (quoting *McGraw,* 723 A.2d at 511).

The FAC fails to allege any false or misleading representation. Plaintiff argues that the Oil Product's title on its front label, "shea & cocoa butter oil," would lead a reasonable consumer to believe that the Oil Product "is comprised of, and the oil contained therein was extracted from, shea butter and cocoa butter." (FAC ¶ 23.) But in determining what ingredients are included in a product, "reasonable consumers can be expected to read a product's ingredients list" on the back label. *Adewol v. TGINESIS LLC*, No. 23-509, 2024 WL 3362434, at *5 (D. Md. July 10, 2024) (citing *Bradby v. Bimbo Bakeries USA, Inc.*, No. 23-522, 2024 WL 1604488, at *6 (D. Md. Apr. 12, 2024)). Here, the back label contains an accurate ingredients list, with shea butter and cocoa butter listed as two of four ingredients in the Oil Product. (*Id.* ¶¶ 17–20.) And the back label also prominently states that the Oil Product is "[e]nriched with shea & cocoa butter," not comprised of or extracted from only those ingredients. (*Id.* ¶ 17.) Thus, no reasonable consumer would believe the Oil Product is extracted entirely or primarily from shea butter and cocoa butter based on the title, because a reasonable consumer would read the back label. *See Bradby*, 2024 WL 1604488, at *6 (finding that a statement on a product's front label that it was "All Butter" was not likely to deceive a reasonable consumer because the back label disclosed all ingredients in the product).

For the same reasons, Defendant's alleged conduct does not fall within the scope of either of the other defined categories of unfair or deceptive trade on which Plaintiff relies. Plaintiff has not alleged a "[f]ailure to state a material fact" as prohibited by § 13-301(3), because Defendant did not omit any material facts; Defendant plainly disclosed all material facts on the back label of the Oil Product. Consequently, Plaintiff does not allege "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact" under § 13-301(9). The FAC plainly fails to allege any unfair or deceptive trade practice under the MCPA.

Tellingly, Plaintiff does not assert that he even reviewed the back label before purchasing the Oil Product. That raises another deficient aspect of the FAC, in that Plaintiff fails to allege the circumstances of his reliance on any purported misrepresentation with the particularity required by Rule 9(b). Plaintiff vaguely alleges that he reviewed the Oil Product's front label in person at an unspecified time and location, which prompted him to then purchase the Oil Product on Amazon, including on March 30, 2025. (*Id.* ¶ 5.) Notably, however, the FAC is devoid of allegations concerning whether Plaintiff ever looked at the back label of the Oil Product, whether the Amazon listing provided different or additional information about the Oil Product, the time that elapsed between Plaintiff's review of the front label and his Amazon purchase, or whether he purchased the product on any other occasion. In other words, the FAC does not adequately plead the circumstances of when, where and how Plaintiff relied on the "shea & cocoa butter oil" title. *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d at 217.

For the foregoing reasons, Plaintiff's MCPA claim must be dismissed.

**ii. Fraudulent Concealment**

Plaintiff also asserts that Defendant is liable for fraudulent concealment. (FAC ¶¶ 41–54.) Under Maryland law, a fraudulent concealment claim has five elements: "the defendant owed a duty to the plaintiff to disclose a material fact, the defendant failed to disclose that fact, the defendant intended to defraud or deceive the plaintiff, the plaintiff took action in justifiable reliance on the concealment, and the plaintiff suffered damages as a result of the defendant's concealment." *Harden v. Budget Rent A Car Sys., Inc.*, 726 F. Supp. 3d 415, 438 (D. Md. 2024) (quoting *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 105 (D. Md. 2020)). Additionally, a claim of fraudulent concealment must satisfy the heightened federal pleading standard of Rule 9(b). *See Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553–54 (4th Cir. 2019).

The first element is crucial; a plaintiff does not have a fraudulent concealment claim if the defendant does not owe an affirmative duty to disclose information. Such a duty "ordinarily evolves from a fiduciary or confidential relationship." *Frank v. Branch Banking & Tr. Co.*, No. 05-1292, 2006 WL 4396131, at *3 (D. Md. Jan. 19, 2006), *aff'd*, 191 F. App'x 180 (4th Cir. 2006). Absent such a relationship, a plaintiff can demonstrate a duty to disclose a material fact "when the defendant's 'partial or fragmentary' statement misleads the plaintiff because of incompleteness." *Eigles v. Kim*, No. 07-2223, 2011 WL 3651802, at *14 (D. Md. Aug. 17, 2011) (quoting *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 629 (D. Md. 2003)). In those circumstances, "there is a duty to disclose the additional information necessary to prevent [the statement] from misleading the recipient." *Id.* (*quoting Lubore v. RPM Assocs., Inc.*, 674 A.2d 547, 556 (Md. Ct. Spec. App. 1996)).

Here, Plaintiff does not allege any facts supporting the existence of a confidential or fiduciary relationship with Defendant. Rather, Plaintiff contends that the "shea & cocoa butter

oil" title constitutes a partial statement of fact that is rendered misleading without the additional information that the Oil Product contains only traces of shea butter and cocoa butter. However, the allegations in the FAC do not support Plaintiff's contention, because Defendant *affirmatively disclosed* the relevant information on the bottle of the Oil Product. (FAC ¶¶ 17–20.) Again, the back label clearly discloses all ingredients and prominently states that the Oil Product is "[e]nriched with shea & cocoa butter." (*Id.*) Thus, Plaintiff does not adequately allege a "partial or fragmentary" statement giving rise to a duty to disclose. The title "shea & cocoa butter oil" does not convey that shea butter and cocoa butter are the only two components of the Oil Product, and regardless, the back label of the bottle plainly discloses that the Oil Product is mineral oil "[e]nriched with" shea butter and cocoa butter. (*Id.* ¶ 17.) For that reason, the FAC fails to state a fraudulent concealment claim.

**B. Contract Claims**

This Court will also apply Maryland law to Plaintiff's breach of warranty claims. Plaintiff explicitly asserts these claims under Maryland law, (FAC ¶¶ 63–68, 85–91), and Defendant relies on Maryland law to analyze them in its briefs.[6] (D.E. 16-1 at 42-43; D.E. 25 at 16.)

**i. Breach of Express Warranty**

Plaintiff concedes dismissal of his breach of express warranty claim without prejudice. (D.E. 24 at 8.) Accordingly, this Court will dismiss that claim.

---

[6] To be sure, Defendant notes that there is no conflict between New Jersey and Maryland law with respect to the implied warranty of merchantability and cites authority from both states. (D.E. 16-1 at 43 n.9, 44; D.E. 25 at 16–17.) Because Defendant implicitly agrees with Plaintiff that Maryland law applies to the claim and does not identify a conflict of laws, this Court need not conduct a choice of law analysis *sua sponte*. *Skeen*, 2014 WL 283628, at *8 (D.N.J. Jan. 24, 2014) (citing *J.B. Hunt Transp., Inc. v. USF Distrib. Svcs.*, 83 F. App'x 476, 478 n. 1 (3d Cir.2003)).

**ii. Breach of Implied Warranty of Merchantability**

Plaintiff asserts a claim for breach of the implied warranty of merchantability under Md. Code Ann., Com. Law § 2-314. "A warranty of merchantability is implied in the contract of sale when the seller of goods is a merchant with respect to goods of that kind." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 421 (D. Md. 2001). For goods to be merchantable under Maryland law, they must at least meet the requirements delineated in Md. Code Ann., Com. Law § 2-314(2). As relevant here, the statute requires that goods must at least "[be] fit for the ordinary purposes for which such goods are used," and must "[c]onform to the promises or affirmations of fact made on the container or label if any." Md. Code Ann., Com. Law § 2-314(2)(c), (f); *see also KeraLink Int'l, Inc. v. Stradis Healthcare, LLC*, No. 18-2013, 2021 WL 4420636, at *14 (D. Md. Sept. 27, 2021). Plaintiff contends that the Oil Product fails to meet both of those requirements.

Plaintiff asserts that the Oil Product "does not provide the benefits associated with oil comprised and extracted entirely or primarily from cocoa butter and shea butter." (FAC ¶ 89.) The FAC alleges no facts to support that assertion. While the FAC describes the general skin care benefits associated with shea butter and cocoa butter (*see* FAC ¶¶ 9–12), it is entirely devoid of factual allegations concerning whether the Oil Product confers those benefits on consumers. Instead, Plaintiff repeatedly alleges that the Oil Product contains only "trace amounts" of shea butter and cocoa butter. Even accepting that as true, the FAC never specifically alleges *how* that makes the Oil Product unfit for its ordinary use. The conclusory assertion that "[t]he amount of actual shea butter and cocoa butter provided has real impacts on the benefits provided to consumers by the Oil Product," (FAC ¶ 29), is not entitled to an assumption of truth absent well-pled factual allegations to support it. *See Iqbal*, 556 U.S. at 781 (explaining that conclusory allegations are

"not entitled to be assumed true"). Accordingly, Plaintiff does not sufficiently allege that the Oil Product was unfit for its ordinary purpose.

Nor does Plaintiff allege that the Oil Product fails to conform to any promise or affirmation made on the label. The bottle does not make any representation that the Oil Product is entirely or primarily comprised of shea butter and cocoa butter. The only promise or affirmation arguably deduced from the "shea & cocoa butter oil" title is that the Oil Product contains shea butter and cocoa butter. Because the Oil Product's labeling is clear about its ingredients, Plaintiff does not adequately allege that the Oil Product fails to conform to any promises or affirmations of fact made on its label. Thus, the FAC fails to state a claim for breach of the implied warranty of merchantability.

**C. Unjust Enrichment**

Lastly, Plaintiff asserts a claim for unjust enrichment. As a threshold matter, Plaintiff does not assert his unjust enrichment claim under a particular state's law, and the parties cite unjust enrichment laws of New Jersey, Maryland, and Pennsylvania across their briefs. (D.E. 16-1 at 44; D.E. 24 at 38–39; D.E. 25 at 17–18.) Because Plaintiff's unjust enrichment claim is pleaded generally, and neither party has identified a conflict of laws with respect to the unjust enrichment claim, this Court will apply New Jersey law. *See Snowdy v. Mercedes-Benz USA, LLC*, No. 23-1681, 2024 WL 1366446, at *12 (D.N.J. Apr. 1, 2024) ("Because Defendants have failed to identify how claims for unjust enrichment conflict from state to state, the Court will apply New Jersey law to Plaintiffs' unjust enrichment claim."); *Bedi v. BMW of N. Am., LLC*, No. 15-1898, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) ("Because neither party identifies a conflict of law, the Court applies New Jersey law to the unjust enrichment claim.").

To state a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that 'defendant received a benefit and that retention of that benefit without payment would be unjust.'" *In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 378 (D.N.J. 2024) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). Further, such a claim requires a direct relationship between the parties. *Id.* (citing *Hammer* v. *Vital Pharms., Inc.*, No. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012)).

Here, Plaintiff fails to plead a direct relationship with Defendant and thus fails to state an unjust enrichment claim. Courts have routinely held that consumers do not establish direct relationships with manufacturers when they purchase a product from a third-party retailer such as Amazon. *See Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846 SDW, 2011 WL 2976839, at *27 (D.N.J. July 21, 2011) (dismissing plaintiff's unjust enrichment claim because plaintiff purchased a television from Amazon, not the defendant manufacturer, and therefore lacked a direct relationship with the defendant); *Bedi*, 2016 WL 324950, at *6 (explaining that because plaintiff purchased a vehicle from a third-party retailer rather than the defendant company, he failed to state an unjust enrichment claim against the defendant). That is because "if a plaintiff purchases a product from a third party retailer, rather than the defendant, then no direct relationship exists where the plaintiff purchaser conferred a benefit on the defendant." *Hughes*, 2011 WL 2976839, at *27. Thus, Plaintiff fails to state an unjust enrichment claim.[7]

[7] Defendant also moves to dismiss Plaintiff's request for punitive damages. But much like Plaintiff's request for injunctive relief, a request for punitive damages is not a cause of action. Accordingly, because the FAC fails to state a claim upon which relief may be granted in the first place, this Court need not address Plaintiff's request for punitive damages. *See Bingham v. Giant Eagle, Inc.*, No. 24- 536, 2025 WL 3041818, at *13 (W.D. Pa. Oct. 31, 2025) ("As Plaintiff has failed to sufficiently support any of his substantive claims, the Court need not address his request for punitive damages.").

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion is **GRANTED**. Plaintiff's FAC is dismissed without prejudice. Plaintiff shall have thirty (30) days to amend his complaint. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
Jose R. Almonte, U.S.M.J.